FRANK T. PEPLER (SBN 100070)
frank.pepler@dlapiper.com
SHELBY MILLER (SBN 299211)
shelby.miller@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

Attorneys for Secured Creditor
CITY NATIONAL BANK, a national banking association

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>H. Tim Hoffman,<br><br>        Debtor. | CASE NO. 15-40463 WJL<br><br>Chapter 7<br><br>Adversary No.<br><br>**CITY NATIONAL BANK'S COMPLAINT (i) TO EXCEPT FROM DISCHARGE, DEBTOR'S DEBT TO CITY NATIONAL BANK PURSUANT TO 11 U.S.C. § 523(a)(2)(B); (ii) TO DENY DEBTOR'S DISCHARGE PURSUANT TO 11 U.S.C. § 727; and (iii) OBJECTING TO CLAIM OF EXEMPTION ON 401k SUBJECT TO CONSENSUAL PERFECTED SECURITY INTEREST IN FAVOR OF CNB**<br><br>**The Honorable Charles Novack** |
| City National Bank, N.A.,<br><br>        Plaintiff,<br><br>v.<br><br>H. Tim Hoffman,<br><br>        Defendant. | |

        Plaintiff City National Bank, N.A. (hereinafter "City National Bank" or "CNB" or "Plaintiff"), a judgment creditor of Defendant H. Tim Hoffman (hereinafter "Hoffman" or

-1-

In re H. Tim Hoffman
Case No. 15-40463WJL
WEST\257000939.1

"Debtor" or "Defendant"), brings this action against Defendant to except from discharge all of Debtor's obligations to CNB pursuant to 11 U.S.C. § 523(a)(2), to deny the discharge that would otherwise be granted pursuant to 11 U.S.C. § 727; and to deny Defendant's claims of exemption made under 11 U.S.C. § 522 and California Code of Civil Procedure § 704.115 for the reasons set forth below:

## JURISDICTION

1. This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157 and § 1334 and 11 U.S.C. § 523.

2. This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(6) to except from the Debtor's discharge, the claim of CNB pursuant to 11 U.S.C. § 523(a)(2).

3. This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001 to deny the Debtor's discharge pursuant to, inter alia, 11 U.S.C. § 727(a)(2).

4. This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001 to deny the Debtor's claim of exemption with respect to that certain 401k account located at Cetera Advisor Networks LLC (the "Cetera Account") and the Debtor's claim of exemption with respect to that certain account or accounts held by Debtor at City National Securities, other affiliates of CNB, or in any other similar accounts no matter where located, established by Debtor as Trustee for the participants in an alleged defined benefit pension plan under which the Debtor is also a participant.

## PARTIES

1. CNB is a national banking institution, at all times material to this complaint has been authorized to do business in the State of California

2. CNB is informed and believes and, on that basis, alleges that Defendant H. Tim Hoffman is a resident of the County of Alameda, California, having a residence located at 7795 Cedar Mountain Road, Livermore, CA.

3. Debtor filed this Chapter 7 case on February 13, 2015.

## FACTS

4. CNB provided an unsecured line of credit to Defendant for the express use by

DLA Piper LLP (US)
San Francisco

-2-

In re H. Tim Hoffman
Case No. 15-40463WJL
WEST\257000939.1

Case: 15-04062    Doc# 1    Filed: 06/12/15    Entered: 06/12/15 13:20:34    Page 2 of 16

Defendant of paying "short term cash" flow needs incurred by Defendant in the operation of the law firms of which Defendant was a partner ("Costs Credit Line"). The Costs Credit Line was a revolving credit facility and principal reductions could be re-borrowed by Defendant.

5. At all times relevant herein and until March of 2012, the maximum principal amount of the Costs Credit Line was $1,000,000. The documents evidencing the Costs Credit Line contained a "cleanup" covenant, which required Defendant to pay the principal of the line to $0, and hold the principal at $0 for 30 days during each year for which the Costs Credit Line was outstanding.

6. In or about March of 2012, the Debtor requested that CNB refinance the Costs Credit Line and increase the maximum amount available thereunder from $1,000,000 to $1,500,000. Defendant represented that the increase was required "due to the timing of case settlements" and agreed to reduce the amount outstanding on the Costs Credit Line to $1,000,000 on or before December 31, 2012.

7. In support of his request for an increase in the Costs Credit Line, Defendant made and delivered to CNB, with the intent that CNB rely thereon, a Personal Financial Statement and a Case List which Defendant certified as true and correct as of or about December 2012.

8. On or about March 15, 2012, the maximum available principal available under Cost Credit Line was increased to $1,500,000, with an agreement by Defendant that the amount outstanding thereunder would be reduced to $1,000,000 on or before December 31, 2012, and that all amounts due under the Costs Credit Line be repaid on the stated maturity date of March 15, 2013. The increased Costs Credit Line was evidenced by a Revolving Promissory Note, a true and correct copy of which is attached hereto as <u>Exhibit A</u>.

9. Debtor failed to reduce the principal balance of the Costs Credit Line to $1,000,000, failed to meet the 30 day cleanup covenant contained therein, and failed to pay in full the principal, interest and other obligations due on the stated maturity date of March 15, 2013. The failure of Debtor to meet these obligations constituted an Event of Default under the Revolving Promissory Note evidencing the Costs Credit Line.

10. Notwithstanding Defendant's Events of Default under the Revolving Note, in

DLA Piper LLP (US)
San Francisco

-3-

In re H. Tim Hoffman
Case No. 15-40463WJL
WEST\257000939.1

Case: 15-04062    Doc# 1    Filed: 06/12/15    Entered: 06/12/15 13:20:34    Page 3 of 16

March 2013, Defendant requested that CNB refinance the Costs Credit Line at a maximum principal amount of $1,500,000 for a further one year term. At the time of his request, Defendant was further in default of his obligations to provide to CNB: (i) a verified personal financial statement, true and correct as of December 1, 2012; (ii) copies of his 2012 tax return; and (iii) a copy of a "Case List" required to be prepared under the Revolving Note and delivered to CNB on June 30 and December 31, 2012.

11. CNB was unwilling to refinancing the Costs Credit Line for a one year term as requested by Defendant without a current verified personal financial statement, tax returns and Case List.

12. In order to provide Defendant with the opportunity to prepare and deliver the financial statements, most recent tax returns, and Case List, CNB provided a short-term extension of the maturity date of the Costs Credit Line evidenced by the Revolving Note to June 15, 2013, and a waiver of the Event of Default arising as a result of Defendant's breach of the cleanup covenant.

13. On June 15, 2013, Defendant again failed to pay the principal and interest of the Revolving Note as due. Debtor again requested that CNB refinance the Costs Credit Line.

14. CNB agreed to refinance the Costs Credit Line, but only on the condition that the Revolving Note be replaced with a Term Note, that the Maturity Date be set at September 15, 2013, that Debtor make a required principal reduction of $25,000 on June 30, 2013 and that all principal, interest and other charges due to CNB be fully due and payable on September 15, 2013.

15. As a condition to refinancing the Costs Credit Line with the Term Note, CNB required Defendant to make a deliver current verified personal financial statement and Case List to support the requested refinancing, and to provide copies of his 2012 returns as filed.

16. On or about May 22, 2013, Defendant made and delivered to CNB, with the intent that CNB rely thereon, a verified personal financial statement dated March 31, 2013, together with a Case List alleged to be accurate as of that date.

17. Solely on the basis of the personal financial statement and Case List made and

-4-

delivered by Defendant, and verified by Defendant as being true and correct as of the dates referred to therein, CNB agreed to further refinance the Costs Credit Line for a short period as a term loan ("Costs Term Loan").

18. The refinancing of the Costs Credit Line to the Costs Term Loan was made by CNB on or about June 3, 2013. In providing the refinancing in the Costs Term Loan, CNB reasonably relied on the representations made in the Personal Financial Statement and the Case List, and Debtor's verification thereof. Based upon such reasonable reliance, CNB refinanced the Costs Credit Line through September 15, 2013, but only under the condition that the Revolving Note be replaced by a new Term Note, that repayments on the Costs Credit Line would no longer be available for re-borrowing, and that all of Debtor's obligations to CNB under the Term Note be paid in full on September 15, 2013. Defendant agreed to these conditions and made and delivered the Term Note to CNB.

19. Defendant failed to repay the Costs Term Loan in full on September 15, 2013, and has failed to make any subsequent payment of principal or interest in respect of the Term Note, other than involuntary payments made by Defendant through CNB's employment of judicial process.

20. On or about January 5, 2014, CNB filed its breach of contract action on the Term Note by filing a verified complaint thereon in the Superior Court for the City and County of San Francisco. CNB filed the verified complaint in San Francisco because the most recent reporting that Defendant provided to CNB listed his address at 170 Pacific Avenue, San Francisco, CA 94111 (the "San Francisco Action"). In addition to the Verified Complaint, CNB filed an Application for Right to Attach Order and Writs of Attachment. CNB attempted to effect service of the San Francisco Action at Defendant's San Francisco address, but filed to effect service.

21. On or about February 26, 2014, Defendant made his appearance in the San Francisco Action by and through his counsel Charles Bendes of the firm of Kornfeld, Nyberg Bendes & Kuhner, filing a motion to change venue of the San Francisco Action to Alameda County, and opposing CNB's Application for Right to Attach Order and Writs of Attachment

DLA Piper LLP (US)
San Francisco

-5-

In re H. Tim Hoffman
Case No. 15-40463WJL
WEST\257000939.1

Case: 15-04062    Doc# 1    Filed: 06/12/15    Entered: 06/12/15 13:20:34    Page 5 of 16

pending disposition thereof.

22. On or about March 4, 2014, CNB and Defendant stipulated to change venue of the San Francisco Action to Alameda County (the "Superior Court Action") based on Defendant's having sold and moved from his condominium located at 170 Pacific Avenue No. 7, San Francisco (the "San Francisco Residence") to 7795 Cedar Mountain Road, Livermore, CA 94550 (the "Livermore Residence").

23. CNB is informed and believes and on that basis alleges that the Livermore Residence consists of a 6,708 square foot home containing six bedrooms and seven bathrooms set in a gated community surrounded by approximately 16.9 acres of planted vineyards.

24. On April 25, 2014, a hearing was held on CNB's Application for Right to Attach Order and for Writs of Attachment, together with Defendant's claim of exemption in respect of the Cetera Account, and the Defined Benefit Pension Plan account that was then held by Defendant at City National Securities or another affiliate of CNB.

25. On April 25, 2014 the Honorable Ronni MacLaren granted CNB's Application for Right to Attach Order and entered her order thereon dated April 25, 2014 ("Right to Attach Order"). The Court further granted Defendant's claim of exemption in respect of his defined benefit plan and denied Defendant's claim of exemption in respect of the Cetera Account. A true and correct copy of the Superior Court's April 25, 2014 Order Granting Right to Attach Order is attached hereto as Exhibit B.

26. After the denial of Defendant's claim of exemption in respect of the Cetera Account, Defendant requested, by and through his counsel Charles Bendes, that CNB refrain from attachment or levy on the Cetera Account and accept in lieu of an attachment and levy and consensual security interest encumbering the Cetera Account.

27. CNB is informed and believes and on that basis alleges that the reason Defendant offered a consensual security interest in the Cetera Account in lieu of an attachment lien or levy thereon, was to avoid a deemed or actual withdrawal of securities from the Cetera Account. CNB accepted the consensual security interest in lieu of an attachment lien or levy and the parties executed and delivered a "Security Agreement For Retirement Account" whereby

DLA Piper LLP (US)
San Francisco

-6-

In re H. Tim Hoffman
Case No. 15-40463WJL
WEST\257000939.1

Case: 15-04062   Doc# 1   Filed: 06/12/15   Entered: 06/12/15 13:20:34   Page 6 of 16

1 Defendant granted CNB a security interest in the Cetera Account.  Promptly thereafter, CNB filed a Financing Statement in respect of the Cetera Account.  True and correct copies of the Cetera Account Security Agreement and Cetera Account Financing Statement are attached hereto as Exhibit C and Exhibit D.

28. Beginning immediately after entry of the Right to Attach Order on April 25, 2014, CNB commenced levy procedures pursuant to Writs of Attachment issued under and pursuant to the Right to Attach Order for every bank account disclosed by Defendant on his December 31, 2013 Personal Financial Statement.

29. On or about June 26, 2014, and in light of its failure to obtain any substantial levy by way of its Right to Attach Order in respect of the bank accounts that he had previously disclosed in reporting to CNB, CNB filed its Motion for Appointment of Limited Purpose Receiver.  CNB's Initial Receiver Motion was set for hearing on July 18, 2014.

30. At the hearing on CNB's Initial Receivership Motion, the Court denied appointment of a Receiver but indicated that she would entertain a Motion for Injunction, on an expedited hearing schedule, to prohibit Defendant from using collections from operation of his business to pay personal and family obligations.

31. On or about July 22, 2014, CNB filed its Application for Order to Show Cause Why Injunction Should Not Issue ("Injunction Application").  CNB set the Injunction Application for hearing on August 1, 2014.  On or about July 25, 2014, the last Court day before Defendant's opposition to the Injunction Motion was due, Defendant filed Chapter 11 case no. 14-43085

32. On or about August 18, 2015, Defendant's Chapter 11 case was dismissed for, among other reasons, Defendant's failure to appear at his first meeting of creditors and his counsel's failure to appear at the first status conference held in the case.

33. After Defendant's Chapter 11 case was dismissed, CNB filed in the Superior Court a Action, a Notice of Modification of Stay advising the Superior Court of the dismissal of Defendant's Chapter 11 case.  At a status conference held on August 12, 2014, a continued hearing was set on CNB's Injunction Application for October 16, 2014.

DLA PIPER LLP (US)
SAN FRANCISCO

In re H. Tim Hoffman
Case No. 15-40463WJL
WEST\257000939.1

Case: 15-04062    Doc# 1    Filed: 06/12/15    Entered: 06/12/15 13:20:34    Page 7 of 16

34. At the October 16, 2014 hearing on CNB's Injunction Application, the Application was granted and an injunction was issued enjoining Defendant from spending any collections from his law firm practice to pay his personal and household obligations. A true and correct copy of the Injunction Order issued by the Court is attached hereto as <u>Exhibit E</u>.

35. Almost immediately after entry of the Injunction Order, Defendant failed to comply with the terms thereof. On December 4, 2014, CNB filed its *Ex Parte* Application For Order to Show Cause Why Defendant Should Not Be Held in Contempt of Court's October 16, 2014 Preliminary Injunction Order and For Order Appointing a Limited Purpose Receiver.

36. Although CNB's application for order holding Defendant in contempt was denied, the Court set for hearing CNB's Motion for Order Appointing a Limited Purpose Receiver for December 23, 2014.

37. On December 9, 2014, CNB filed its Renewed Motion for Appointment of a Limited Purpose Receiver and the matter was set for hearing on December 23, 2014. Defendant opposed the Renewed Receivership Motion. After hearing on December 23, 2014, the Court granted CNB's Renewed Receivership Motion and Kyle Everett was appointed as receiver (the "Receivership Order"). A true and correct copy of the Superior Court's Order Granting Renewed Motion for Appointment of Limited Purpose Receiver and the Receivership Order is attached hereto as <u>Exhibit F</u>.

38. Even after appointment of the Receiver, Defendant failed to deliver and account for proceeds of his law practice, in the form and at the time required by the Receivership Order. Among other violations of the Receivership Order, on or about January 18, 2015, the Receiver took possession of a check in the approximate amount of $21,000 payable to Defendant's law firm arising out of the "Party City" case. After the Receiver attempted to deposit the Party City check, Citibank is informed and believes and on that basis alleges that Defendant called the issuer of the Party City check and caused payment to be stopped on thereon.

39. Defendant's actions with respect to the Party City check was a direct violation of the Receivership Order, and was designed to hinder, delay and defraud the Receiver and CNB, by and through the Receiver.

-8-

DLA Piper LLP (US)
San Francisco

In re H. Tim Hoffman
Case No. 15-40463WJL
WEST\257000939.1

Case: 15-04062   Doc# 1   Filed: 06/12/15   Entered: 06/12/15 13:20:34   Page 8 of 16

40. Not less than 95 days' prior to February 13, 2015, CNB filed its Motion for Summary Judgment or, in the Alternative, for Summary Adjudication, and set the motion for hearing on that date. On or about February 11, 2015, the Court in the Superior Court Action entered her tentative ruling in favor of CNB and against Defendant on all matters raised therein..

41. This case was filed on February 13, 2015, staying further adjudication of CNB's MSJ Motion. On or about March 3, 2015 the Court in this case entered his order extending the automatic stay for most property and against almost all creditors, with a carveout to permit CNB to liquidate its claim in the Superior Court Action.

42. On May 6, 2015, a continued hearing was held in the Superior Court on CNB Motion for Summary Judgment or, in the Alternative, for Summary Adjudication. At the May 6 hearing, the Superior Court granted CNB's motion for summary judgment and set a fee motion hearing for June 25, 2012 on CNB's motion for allowance of attorneys' fees and costs.

**FIRST CLAIM FOR RELIEF**
[**Exception to discharge pursuant to 11 U.S.C. § 523**]

43. CNB repleads, realleges, and incorporates herein by reference as though set forth in full the allegations of Paragraphs 1 through 40, inclusive.

44. CNB is informed and believes and on that basis alleges that at all times in 2012 and 2013 when Defendant requested that CNB refinance the Costs Credit Line, and continue to extend $1,500 in credit for short term capital needs of Defendant's law firm, Defendant was aware of his obligations to CNB under the Revolving Credit Note, including but not limited to the obligation to pay the Costs Credit Line in full on December 31, 2012.

45. Defendant was at all times aware during 2012 and 2013 when Defendant request that CNB refinance the Costs Credit Line, and continue to extend credit of $1,500,000 for short term capital needs of Defendant's law firm, that CNB would not refinance the Costs Credit Line without an updated verified Personal Financial Statement and Case List.

46. In response to CNB's request, Defendant made and delivered a Personal Financial Statement and Case List to CNB, both in writing, for the purpose of inducing CNB to refinance

-9-

In re H. Tim Hoffman
Case No. 15-40463WJL
Case: 15-04062 Doc# 1 Filed: 06/12/15 Entered: 06/12/15 13:20:34 Page 9 of 16
WEST\257000939.1

the Case Credit Line.  A true and correct copy of the Personal Financial Statement delivered to CNB in connection with Defendant's request for refinancing is attached hereto as <u>Exhibit G</u>.  A true and correct copy of the Case List made and delivered by Defendant in connection with Defendant's request for refinancing is attached hereto as <u>Exhibit H</u>.  In the Case List, Defendant represented to CNB, with the intent that CNB rely on such representation, that the current cases being prosecuted by his law firm had a fee value to Defendant of $14,550,000 payable in 2012 and 2013.

47. Defendant knew when he made and delivered the Personal Financial Statement and Case List in support of his request for refinancing of the Costs Credit Line, that the Personal Financial Statement and Case List contained material misstatements of fact.

48. When he made and delivered the Personal Financial Statement and Case List in support of his request for refinancing of the Costs Credit Line, Defendant intended that CNB rely thereon.

49. In making its decision to refinance the Costs Credit Line at the request of Defendant, CNB reasonably relied on the written statements of Defendant made in support of such request, including but not limited to the statements made:  (i) in the Personal Financial Statement; (ii) in the Case List; (iii) in respect of Defendant's need for such refinancing of the Costs Credit Line because of cash flow requirements of his law firm business.

50. At all times in 2012 and 2013 when Defendant requested a refinancing of the Costs Credit Line, Defendant represented to CNB that the Costs Credit Line would remain for business purposes only, and that the Costs Credit Line was required only as the result of delays in settlements or resolutions of cases prosecuted by Defendant's law firm.

51. CNB is further informed and believes and on that basis alleged that between the months of October 2012 and December 2012, Defendant sold his San Francisco Residence for approximately $2,500,000.  CNB is further informed and believes and on that basis alleges that the cash proceeds available to Defendant from the sale of his San Francisco residence were sufficient to pay in full the amounts due to CNB under the Costs Credit Line.

52. CNB is informed and believes and on that basis alleges that Defendant purchased

DLA PIPER LLP (US)
SAN FRANCISCO

In re H. Tim Hoffman
Case No. 15-40463WJL
WEST\257000939.1

the Livermore Residence between the months of October 2012 and December 2012, and that Defendant paid approximately $3,795,000 for the Livermore Residence. CNB is further informed and believes and on that basis alleges that defendant used all cash proceeds from the sale of his San Francisco Residence, case collections from operation of his law firm, together with loan proceeds and other cash sufficient to pay in full the amounts due to CNB under the Costs Credit Line, to make the cash down payment required for Defendant to obtain financing for his purchase of the Livermore Residence.

53. During the months of October and December, 2012, Defendant know or should have known that he principal reduction due to CNB under the Revolving Note of $500,000 as of December 31, 2012, and that he had an obligation to pay the full $1,500,000 balance of the Revolving Note on March 15, 2013. Despite Defendant knowing that his obligations to CNB under the Costs Credit Line were due and owing, and despite Defendant continuing to represent to CNB that he required refinancing of the Costs Credit Line for payment of short term cash flow needs associated with his law firm, Defendant knowingly used proceeds of sale of his San Francisco Residence, together with other cash sufficient to pay in full, the Costs Credit Line, to purchase the Livermore Residence.

54. For the above and foregoing reasons, all of Defendant's obligations to CNB under the Judgment and any amended Judgement entered in CNB's favor in the Superior Court Action should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2).

**SECOND CLAIM FOR RELIEF**
[denial of discharge pursuant to **11 U.S.C. § 727(a)(2) and (a)(7)**]

55. CNB repleads, realleges, and incorporates herein by reference as though set forth in full the allegations of Paragraphs 1 through 40, inclusive.

56. From time to time between the dates of February 12, 2014 and February 13, 2015, Defendant transferred, removed, destroyed, mutilated or concealed, or permitted to be transferred, removed destroyed, mutilated or concealed, property of the Defendant.

57. Transfers made by Defendant of property of Defendant within one year prior to

DLA Piper LLP (US)
San Francisco

In re H. Tim Hoffman
Case No. 15-40463WJL
WEST\257000939.1

February 13, 2015 included, but are not limited to, the transfer by Defendant of all deposits held by Defendant in those personal and business accounts at banks, brokers, and other depository institutions described by Defendant, and verified by Defendant to be true and correct in his Personal Financial Statement delivered to CNB as required by the Costs Credit Line Revolving Note and Term Note, and the dates on which CNB caused levies to made on such accounts pursuant to the Right to Attach Order and Writs of Attachment issued thereunder

58. Transfers made by Defendant of property of Defendant within one year prior to February 13, 2015 included, but are not limited to, the transfer by Defendant of all deposits held by Defendant in his personal and business accounts at First Republic Bank between July 2, 2014, on which date Defendant testified under oath that such accounts were the sole deposit accounts used by him in the operation of his business and payment of his personal expenses, and the dates that CNB caused levies to made on First Republic Bank pursuant to the Right to Attach Order and Writs of Attachment issued thereunder.

59. CNB is informed and believes and on that basis alleges that the transfer, destruction and concealment of property of the Defendant in the one year preceding the filing of his Chapter 7 case on February 13, 2015 was made with the intent to hinder, defraud or delay the enforcement by CNB of its rights in respect of the Right to Attach Order, the Writs of Attachment issued thereunder, and the enforcement of the Superior Court Judgment thereafter issued in favor of CNB.

60. CNB is informed and believes and on that basis alleges that from July 24, 2014 through August 18, 2014, during which time Defendant was a debtor in possession in his Chapter 11 case pending under Title 11, Defendant transferred, removed, destroyed, mutilated, or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed, property of the Chapter 11 estate, with the intent to hinder, defraud or delay the enforcement by CNB of rights in respect of the Right to Attach Order, the Writs of Attachment issued thereunder and the enforcement of the Superior Court Judgment in favor of CNB.

61. CNB is informed and believes and on that basis alleges that from July 24, 2014 through August 18, 2014, when Defendant was a debtor in possession in his Chapter 11 case

DLA Piper LLP (US)
San Francisco

-12-

In re H. Tim Hoffman
Case No. 15-40463WJL
WEST\257000939.1

Case: 15-04062   Doc# 1   Filed: 06/12/15   Entered: 06/12/15 13:20:34   Page 12 of 16

pending under Title 11, Defendant transferred, removed, destroyed, mutilated, or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed, property of the Chapter 11 estate, with the intent to hinder, defraud or delay the enforcement by CNB of rights in respect of the Right to Attach Order, the Writs of Attachment issued thereunder and the enforcement of the Superior Court Judgment in favor of CNB.

62. CNB is informed and believes and on that basis alleges that from July 24, 2014 through August 18, 2014, when Defendant was a debtor in possession in his Chapter 11 case pending under Title 11, Defendant transferred, removed, destroyed, mutilated, or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed, property of the Chapter 11 estate, with the intent to hinder, defraud the Court and officers of the Court in the administration of Defendant's Chapter 11 case.

63. For the above and foregoing reasons, Defendant's discharge should be denied under 11 U.S.C. § 727(a)(2) and (a)(7).

### THIRD CLAIM FOR RELIEF
[opposition to claims of exemption made under **11 U.S.C. § 522**]

64. CNB repleads, realleges, and incorporates herein by reference as though set forth in full the allegations of Paragraphs 1 through 40, inclusive.

65. Defendant has claimed exemptions with respect to two accounts that he asserts are exempt pursuant to 11 U.S.C. § 522 and California Code of Civil Procedure § 704.115. One account is his 401k account defined above as the Cetera Account, and the second is a defined benefit plan held at a CNB affiliate prior to the filing of this case ("DB Plan").

66. On or about May 5, 2014, Defendant, by and through his then-counsel of record, requested that CNB refrain from levying the writs of attachment granted in the Superior Court Action pursuant to the Right to Attach Order in respect of Defendant's interest in the Cetera Account, and that CNB accept from Defendant a consensual security interest encumbering the Cetera Account.

67. CNB is informed and believes and on that basis alleges that Defendant's request

DLA Piper LLP (US)
San Francisco

-13-

In re H. Tim Hoffman
Case No. 15-40463WJL
WEST\287000939.1

Case: 15-04062    Doc# 1    Filed: 06/12/15    Entered: 06/12/15 13:20:34    Page 13 of 16

to CNB was made to enable Defendant to avoid a potential adverse tax consequence that would have resulted from CNB's levy on the Cetera Account pursuant to California law.

68. On or about May 8, 2014, Defendant executed and delivered to CNB a document entitled "Security Agreement for Retirement Account" pursuant to which Defendant granted to CNB a security interest encumbering all of his right, title and interest in and to the Cetera Account. A true and correct copy of the Security Agreement for Retirement Account is attached hereto as <u>Exhibit C</u>.

69. On or about May 14, 2015, CNB filed with the California Secretary of State, a UCC1 financing statement perfecting the security interest granted by Defendant in favor of CNB in and to the Cetera Account. A true and correct copy of the UCC1 is attached hereto as <u>Exhibit I</u>.

70. As of the most recent statement produced by Defendant in the Superior Court Action, the balance in the Cetera Account as of May 31, 2014 was $182,356.07.

71. The amount of CNB's judgment entered against Defendant in the Superior Court Action is $1,687,404.10, subject to amendment to the extent of allowance by the Superior Court of CNB's pending motion for allowance of attorneys' fee and costs.

72. Defendant lacks equity in the Cetera Account in excess of CNB's Superior Court Judgment secured by the consensual security interest granted by Defendant and perfected by CNB to which any claim of exemption by Defendant might attach.

73. CNB is informed and believes and on that basis alleges that, by granting and perfecting in CNB's favor a security interest in the Cetera Account securing CNB's Superior Court Judgment, Defendant's claim of exemption only exists to the extent that the value of the Cetera Account in excess of the consensual security interest granted by Defendant and perfected by CNB securing CNB's Superior Court Judgment.

74. For the above and foregoing reasons, Defendant's claim of exemption pursuant to 11 U.S.C. § 522 and California Code of Civil Procedure § 704.115 in respect of the Cetera Account should be denied.

75. CNB is informed and believes and on that basis alleges that at all times relevant

-14-

In re H. Tim Hoffman
Case No. 15-40463WJL
Case: 15-04062  Doc# 1  Filed: 06/12/15  Entered: 06/12/15 13:20:34  Page 14 of 16
WEST\257000939.1

DLA PIPER LLP (US)
SAN FRANCISCO

hereto, Defendant has acted as the Trustee of the DB Account, and that no third party trustee has managed the DB Account or overseen Defendant's acts in connection with the DB Account.

76. CNB is informed and believes and on that basis alleges that Defendant is only 1 of 19 participants in the defined benefit plan to which the DB Plan relates.

77. CNB is informed and believes and on that basis alleges that Defendant, as the Trustee of the DB Account, has permitted Defendant, as one of the defined benefit plan participants to which the DB Account relates, to make such withdrawals from the DB Account for use by Defendant for loans used by Defendant to acquire assets for the sole and exclusive benefit of Defendant, and for cash disbursements used by Defendant in the ordinary course of his business and to pay his ordinary course of living expenses. The loans, disbursements for business expenses and disbursements for living expenses made by Defendant as Trustee of the DB Account are not related to the defined benefit plan's retirement purposes.

78. For the above and foregoing reasons, Defendant's claim of exemption pursuant to 11 U.S.C. § 522 and California Code of Civil Procedure § 704.115 in respect of the DB Account should be denied.

## PRAYER

WHEREFORE, City National Bank requests that the Court enter judgment against Hoffman as follows:

a) declaring that all of Defendant Hoffman's obligations to City National Bank, including its costs, fees and expenses in this case and as allowed in the Superior Court Action, are excepted from discharge pursuant to 11 U.S. § 523(a)(2);

b) declaring that Defendant Hoffman's discharge is denied pursuant to 11 U.S.C. § 727(a)(2);

c) declaring that Defendant Hoffman's claims of exemption in respect of the Cetera Account and he DB Account are denied; and

d) granting to City National Bank such other and further relief to which the Court determines it may be entitled.

DLA Piper LLP (US)
San Francisco

In re H. Tim Hoffman
Case No. 15-40463WJL
WEST\257000939.1

Case: 15-04062    Doc# 1    Filed: 06/12/15    Entered: 06/12/15 13:20:34    Page 15 of 16

Dated: June 12, 2015

CITY NATIONAL BANK, a national banking institution


By */s/ Frank Pepler*
DLA PIPER LLP (US)
FRANK T. PEPLER
Attorney for City National Bank, a national banking association

DLA Piper LLP (US)
San Francisco

-16-

In re H. Tim Hoffman
Case No. 15-40463WJL
WEST\25700939.1

Case: 15-04062    Doc# 1    Filed: 06/12/15    Entered: 06/12/15 13:20:34    Page 16 of 16